IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| NuCURRENT, INC. ) | |
| 641 W. Lake St. ) | |
| Suite 304 ) | |
| Chicago, IL 60661 ) | |
| ) | Civil Action No. |
| *Plaintiff*, ) | |
| ) | **COMPLAINT FOR DECLARATORY** |
| ) | **RELIEF AND REVIEW OF** |
| v. ) | **AGENGY ACTION UNDER THE** |
| ) | **ADMINISTRATIVE PROCEDURE ACT** |
| ) | |
| U.S. CITIZENSHIP AND ) | |
| IMMIGRATION SERVICES, ) | |
| c/o Office of the General Counsel ) | |
| 245 Murray Lane, SW ) | |
| Mail Stop 0485 ) | |
| Washington, DC 20528-0485, ) | |
| ) | |
| Kenneth T. Cuccinelli ) | |
| (or his successor) ) | |
| Acting Director, U.S. Citizenship ) | |
| and Immigration Services, ) | |
| in his Official Capacity, ) | |
| c/o Office of the General Counsel ) | |
| 245 Murray Lane, SW ) | |
| Mail Stop 0485 ) | |
| Washington, DC 20528-0485, ) | |
| ) | |
| *Defendants*. ) | |

**INTRODUCTION**

1. Plaintiff NuCurrent, Inc. (NuCurrent) challenges the Government's denial of its H-1B nonimmigrant petition (hereafter "petition") filed on behalf of Ms. Unnati Wadkar, a Hardware Engineer NuCurrent sought to employ.

2. NuCurrent is an award-winning company that is globally recognized for its pioneering developments in the wireless power industry. NuCurrent has been at the forefront of wireless power innovation for a decade. Its patented multi-layer multi-turn (MLMT) technology makes it possible to create the world's thinnest, smallest and most efficient antennae found in many of today's smartphones. NuCurrent employs dozens of highly skilled workers in advanced engineering positions, all of which have bachelors, masters or PhDs in engineering.

2. The H-1B visa classification allows highly skilled and educated foreign workers to work for U.S. employers in "specialty occupations"—that is, positions requiring the theoretical and practical application of a body of highly specialized knowledge for which a bachelor's or higher degree in a specific specialty is required. The relevant regulations, 8 C.F.R. § 214.2(h)(4)(iii)(A)(1)-(4), define a specialty occupation as one "which requires theoretical and practical application of a body of highly specialized knowledge in fields of human endeavor including, but not limited to, architecture, *engineering* . . . , and which requires the attainment of a bachelor's degree or higher in a specific specialty, or its equivalent, as a minimum for entry into the occupation in the United States." As the regulatory definition of a specialty occupation includes the field of engineering, the Hardware Engineer position should be considered a qualifying specialty occupation.

3. Defendants denied the H-1B petition after arbitrarily and capriciously determining that NuCurrent failed to demonstrate that its Hardware Engineer position could be classified as a specialty occupation. The legal standard for review is a preponderance of the evidence and NuCurrent sufficiently demonstrated that the sponsored position of Hardware Engineer qualifies as a specialty occupation by the preponderance of the evidence.

4. USCIS officers are required to adjudicate petitions under the "preponderance of the evidence" standard. See Matter of Chawathe, 25 I&N Dec. 369 (AAO 2010). Thus, if the petitioner submits relevant, probative, and credible evidence that leads USCIS to believe that the claim is "more likely than not" or "probably true," the petitioner has satisfied the standard of proof. Matter of E-M-, 20 I&N Dec. 77, 79-80 (Comm'r 1989); see also U.S. v. Cardozo-Fonseca, 480 U.S. 421 (1987) (discussing "more likely than not" as a greater than 50% chance of an occurrence taking place). Further, as noted in the USCIS Adjudicator's Field Manual, Chapter 11.1(c) (Burden of Proof and Standard of Proof), the standard of proof in this matter is the "preponderance of the evidence" standard.

4. At NuCurrent, the Hardware Engineer brings expertise in hardware design to the complex challenges of groundbreaking field of wireless power. The Hardware Engineer works directly on the development of proprietary wireless charging devices, which are used in digital devices, such as smartphones, to charge without a cable. The Hardware Engineer is responsible for understanding and designing electrical schematics, laying out pc boards, testing pc boards, and optimizing wireless power designs, both transmitters and receivers, into commercial products that meet or exceed regulatory requirements (i.e. FCC, CISPR) and customer specifications. NuCurrent requires completion of a degree in electrical engineering, mechanical engineering, a closely related field, or its equivalent for the Hardware Engineer position.

5. In support of its petition, NuCurrent submitted extensive evidence, including a detailed, multiple-page job description, including specific duties of the position, a breakdown of how the Hardware Engineer's time is used, and letters from prominent hiring executives at similarly situated companies stating that they too require a degrees in electrical engineering, mechanical engineering, or closely related fields for similar positions. *See Ex. 1, 2, and 4.*

NuCurrent provided this evidence to demonstrate that the job is within a specialty occupation within the meaning of the Immigration and Nationality Act (INA).

6. Defendants' denial of Plaintiff's H-1B petition was arbitrary and capricious and contrary to law. Defendants disregarded probative evidence, sufficient to meet the preponderance of the evidence standard, detailing the job duties, their complexity, and the correlation between the duties and NuCurrent's requirement that its Hardware Engineer hold at least a Master's degree in electrical engineering, mechanical engineer, a closely related field, or its equivalent.

7. Plaintiff respectfully requests that this Court vacate the denial and approve the H-1B petition submitted on behalf of Ms. Wadkar.

## JURISDICTION AND VENUE

8. This case arises under the INA, 8 U.S.C. § 1101 *et seq.*, and the Administrative Procedure Act (APA), 5 U.S.C. § 701 *et seq*. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331 (federal question jurisdiction). This Court has authority to grant relief under the Declaratory Judgment Act, 28 U.S.C. §§ 2201-02, and the APA. The United States has waived its sovereign immunity under 5 U.S.C. § 702.

9. Venue in this judicial district is proper under 28 U.S.C. § 1391(e)(1)(C) because this is a civil action in which the Plaintiff is incorporated and with its principal place of business in Chicago, Illinois.

## FINAL AGENCY ACTION AND EXHAUSTION OF REMEDIES

10. Defendant denied Plaintiff NuCurrent's H-1B petition on October 23, 2018.

11. Plaintiff subsequently appealed that decision to the Administrative Appeals Office of the USCIS. That appeal was denied on June 14, 2019. Defendant USCIS' June 14, 2019 decision

of Plaintiff NuCurrent's H-1B petition constitutes final agency action under the APA. *See* 5 U.S.C. §§ 551(13); 701(b)(2); 704. Plaintiff has no further administrative remedies to exhaust. As the AAO is the final adjudicative body within the USCIS to which Plaintiffs can administratively appeal, the AAO's denial constitutes final agency action under the APA. Plaintiff has properly filed this action before this Court.

## PARTIES

12. Plaintiff NuCurrent is a corporation incorporate and with its principal place of business in Chicago, Illinois. Since 2009, Plaintiff NuCurrent has developed and implemented wireless power technology. NuCurrent not only designs wireless technology hardware but also has developed a suite of proprietary tools to help engineers, including its NuIQ platform that simulates the effects of changes to a product design with exceptional accuracy. Plaintiff NuCurrent filed the H-1B petition at issue here on behalf of Ms. Wadkar. An H-1B petition is sponsored by an employer, and while an employee has a personal interest in the petition, employees are only a beneficiary of the petition. Therefore Ms. Wadkar is not a party to this action.

13. Defendant USCIS is a component of the Department of Homeland Security (DHS), 6 U.S.C. § 271, and an "agency" within the meaning of the APA, 5 U.S.C. § 551(1). USCIS is responsible for adjudicating immigration benefits, including nonimmigrant visa petitions. USCIS denied NuCurrent's H-1B petition on behalf of Ms. Wadkar at issue here.

14. Defendant Kenneth T. Cuccinelli is, at the time of filing of this complaint, the Acting Director of USCIS, and is sued here in his official capacity. In this role, he oversees the adjudication of immigration benefits and establishes and implements governing policies of the

USCIS. The USCIS Director has ultimate responsibility for the adjudication of Plaintiff NuCurrent's H-1B petition.

## LEGAL BACKGROUND

*H-1B Petition Process*

15. Section 101(a)(15)(H)(i)(b) of the INA authorizes DHS to admit into the United States temporary workers whom U.S. employers seek to employ in specialty occupations. 8 U.S.C. § 1101(a)(15)(H)(i)(b). This nonimmigrant classification (a visa with a short-term purpose) is commonly referred to as "H-1B."

16. The Immigration and Nationality Act defines "specialty occupation" as one that requires the "(A) theoretical and practical application of a body of highly specialized knowledge, and (B) attainment of a bachelor's or higher degree in the specific specialty (or its equivalent) as a minimum for entry into the occupation in the United States." 8 U.S.C. § 1184(i).

17. Before filing an H-1B nonimmigrant visa petition with USCIS, the employer must obtain from the U.S. Department of Labor (DOL) a certification of a Labor Condition Application (LCA). 8 U.S.C. § 1182(n)(1). The LCA requires the employer to attest that the employee in the position will be paid a prevailing wage for that position in the location of employment. The employer's attestations in the LCA are intended to ensure that the employment of an H-1B worker will not have an adverse effect on the wages and working conditions of similarly situated U.S. workers. *See* 8 U.S.C. §§ 1182(n)(1)(A)-(D).

18. To demonstrate to DOL that it will pay the higher of the prevailing or actual wage (the required wage) for its job, the employer may obtain a prevailing wage from a DOL online wage library, using a Standard Occupational Classification (SOC) for the job, the job location

and one of four wage levels depending on the employer's education and experience requirements.

19. The employer must include the DOL LCA certification with its H-1B petition.

20. An H-1B petition must include the certified and signed LCA, a completed Form I-129, which is a USCIS form for employment-based petitions, and supporting evidence, which typically includes a description of the offered position, proof that sponsored individual qualifies for that position (often in the form of diplomas, transcripts, resumes, and employment letters), proof of an offer of employment, and evidence of available work to perform.

### *H-1B Cap and Lottery*

21. Congress established a cap of 65,000 regular H-1B visa numbers per fiscal year (FY). *See* 8 U.S.C. § 1184(g)(1). An additional 20,000 H-1B visa numbers are available each FY without regard to the 65,000 cap if the beneficiary has a Master's or higher degree from a U.S. university. *See* 8 U.S.C. § 1184(g)(5)(C). USCIS has characterized the 20,000 additional visa numbers as the H-1B "Master's exemption."

22. A U.S. employer whose petition is subject to the annual cap may file beginning on the first business day of April for employment that begins on October 1 of that year (the first day of the next FY). If USCIS determines that it has received more than enough petitions to meet the Master's exemption and the statutory cap at any time within the first five business days of the filing period, it uses a computer-generated random selection process (lottery) to select H-1B petitions for adjudication from the petitions received during that time period.

### *H-1B Requirements and Adjudication*

23. An H-1B petitioner must demonstrate that the position qualifies as a specialty occupation and that the beneficiary is qualified to perform the job duties required by the

specialty occupation. *See* 8 C.F.R. §§ 214.2(h)(4)(i)(A)(1), (h)(4)(iii)(B)(3).

24. USCIS reviews H-1B petitions under a preponderance of the evidence standard. USCIS officers are required to apply the "preponderance of the evidence" standard. See Matter of Chawathe, 25 I&N Dec. 369 (AAO 2010). Thus, if the petitioner submits relevant, probative, and credible evidence that leads USCIS to believe that the claim is "more likely than not" or "probably true," the petitioner has satisfied the standard of proof. Matter of E-M-, 20 I&N Dec. 77, 79-80 (Comm'r 1989); see also U.S. v. Cardozo-Fonseca, 480 U.S. 421 (1987) (discussing "more likely than not" as a greater than 50% chance of an occurrence taking place).

25. Further, as noted in the USCIS Adjudicator's Field Manual, Chapter 11.1(c) (Burden of Proof and Standard of Proof), the standard of proof for an H-1B petition is the "preponderance of the evidence" standard. USCIS has not adequately explained why it is more likely than not that the Hardware Engineer position does not qualify as a specialty occupation. USCIS appears to be applying a higher evidentiary standard in its review of NuCurrent's petition.

26. The regulation provides that, to qualify as a specialty occupation, the position must meet one of the following criteria:

> (1) A baccalaureate or higher degree or its equivalent is normally the minimum requirement for entry into the particular position;
> (2) The degree requirement is common to the industry in parallel positions among similar organizations or, in the alternative, an employer may show that its particular position is so complex or unique that it can be performed only by an individual with a degree;
> (3) The employer normally requires a degree or its equivalent for the position; or
> (4) The nature of the specific duties are [*sic*] so specialized and complex that knowledge required to perform the duties is usually associated with the attainment of a baccalaureate or higher degree.

8 C.F.R. § 214.2(h)(4)(iii)(A)(1)-(4).

27. Upon reviewing an H-1B petition, USCIS can request additional information or documentation before making a final decision. USCIS typically gives the Petitioner 83 days to

respond to such requests. In the instant petition, USCIS requested such additional information and documentation.

28. When USCIS makes a final decision it can either approve or deny the petition. If a petition is approved, USCIS issues an I-797 approval notice. If the petition is denied, Petitioner is given 33 days to challenge that decision by either filing a motion with the agency or filing an appeal to the Administrative Appeals Office ("AAO").

29. When submitting an appeal to the AAO, that intra-agency review board completes a do novo review of the petition under the preponderance of the evidence standard. Petitioners are able to submit new evidence and additional briefing materials when filing at the AAO.

## FACTUAL ALLEGATIONS

*Plaintiff NuCurrent*

30. Established in 2009 as an Illinois corporation, with headquarters in Chicago, Plaintiff NuCurrent is a wireless power technology company with 24 employees and 85 patents granted or pending worldwide. NuCurrent was ranked the number one most innovative company in Illinois according to Crain's Eureka Index in 2015. NuCurrent was also named one of the "Top 50 Influencers in Wireless Power" by Wireless Power World in 2013. NuCurrent has received numerous awards, including: 2017 IoT Breakthrough Award Winner, 2017 4th Revolution Award Finalist (Product of the Year), 2017 Illinois Technology Association City Lights Award Finalist (Industry Disrupter), and 2017 Chicago Innovation Awards Finalist.

31. From 2009-2013, NuCurrent focused exclusively on wireless power for implanted medical devices. NuCurrent sought to develop a new type of antenna technology to deal with complex issues like transmitting power through inconsistent human tissue, Specific Absorption Rate (SAR) limits, tissue heating, implant variability, and significant size restrictions. These

challenging constraints led to the development of its patented MLMT technology, which provides higher Q in smaller spaces to yield greater efficiency, faster charge speeds, lower heat and unbeatable form factors.

32. Moving beyond medical implants in 2013, NuCurrent has developed multiple breakthroughs in wireless power systems, components and integration processes. Today, NuCurrent supplies its NuIQTM Technology Platform and wireless power solutions worldwide with unmatched speed, certainty and performance. Today NuCurrent serves numerous established industry clients such as Honeywell, Molex, and Fitbit. NuCurrent has supplied patented resonators that enabled the world's first FCC-approved through-surface wireless charging system called the Teslink by its customer Gill Electronics.

*Wadkar's Employment with NuCurrent*

33. Unnati Wadkar is a highly-educated citizen of India and accomplished engineer critical to the operations of NuCurrent. Ms. Wadkar earned a bachelor's degree in electronics and telecommunications engineering in August 2014, from the University of Mumbai, in Mumbai, India. She received her Master of Science degree in electrical and computer engineering, in May 2016, from the University of Illinois at Chicago, in Chicago, Illinois.

34. Ms. Wadkar began working for NuCurrent as an Electrical Engineer Intern in September 2015, with work authorization based on her F-1 student status. She was subsequently promoted to the positions of Junior Research Engineer and Hardware Engineer. Her work authorization continued through June 19, 2019, at which time she departed the United States. Throughout all periods of her employment with NuCurrent, she complied with her F-1 Status. Should USCIS approve NuCurrent's H-1B petition, Ms. Wadkar will return to full-time work for the company as a Hardware Engineer.

35. Ms. Wadkar was a lead engineer in the development of multiple designs selected by the Wireless Power Consortium for inclusion in their Qi specification, including a recent transmitter that extends the distance of power transfer 3x over the previous specifications.

36. Ms. Wadkar is a significant contributor to NuCurrent's research and development. She is a named inventor on over 10 patents currently in process. Ms. Wadkar has played a leading role in supporting design and integration for major NuCurrent customer programs, including the world's largest shoe companies (self-tying shoes and sensor-enabled shoes), major cell phone and accessory companies, and the world's leading industrial handhelds company (package delivery computers). All told, Ms. Wadkar is an integral designer of technology that could be in tens of millions of devices in 2020. Plaintiff is at a substantial loss without Ms. Wadkar present in its office.

37. Ms. Wadkar is one of the world's foremost experts on testing and certification for wireless power systems. She works with domestic and international testing labs to refine products and test procedures to ensure quality, safety and regulatory compliance with FCC, CISPR and others. Even on programs where Unnati was not lead designer, NuCurrent has often utilized her expertise to support the test and certification stages.

*NuCurrent's H-1B Petition*

38. In April 2018, NuCurrent properly submitted to USCIS its H-1B petition on behalf of Ms. Wadkar for consideration as a "Master's exemption" petition. *Ex. 1.* NuCurrent filed the H-1B petition because it had made an investment in Ms. Wadkar and wanted to continue benefiting from her contributions to NuCurrent's operations. Ms. Wadkar is a leading designer at NuCurrent and the company is suffering in her absence.

39. Pursuant to its lottery, USCIS randomly selected NuCurrent's petition and, on or about April 12, 2018, accepted the H-1B petition for filing.

40. NuCurrent also included with the petition DOL's certification of its LCA for the position. In the LCA, NuCurrent selected SOC 17-2199, which is the occupational classification for Engineers, All Other. At the time of filing the Department of Labor's LCA form did not allow for the selection of a subcategory under that SOC. Plaintiff NuCurrent sought to classify the position under SOC 17-2199.06, which is the occupational code for microsystems engineers. NuCurrent designated the position as entry level with the corresponding DOL wage level for an entry position in this field, DOL wage level 1. *Ex. 1 at 49-54*.

41. In support of its H-1B petition, NuCurrent included a March 30, 2018 letter from the company's CEO describing in detail NuCurrent, the duties of the Hardware Engineer position, and Ms. Wadkar's qualifications. This evidence specified that the minimum education required for the Hardware Engineer is a Master's degree in electrical engineering, mechanical engineering, a closely related field, or its equivalent. *Ex. 1 at 55-58*.

42. On August 23, 2018, Defendant USCIS issued a request for evidence ("RFE"). USCIS erroneously claimed that NuCurrent had not met any of the regulatory criteria to qualify for a specialty occupation. The RFE included suggestions as to the type of evidence that NuCurrent could include to establish each of the regulatory criteria. *Ex. 2 at 2-8*.

43. NuCurrent's timely RFE response, received by Defendant USCIS on October 8, 2018, demonstrated that the Hardware Engineer position satisfied all four of the independent regulatory criteria for demonstrating that a position falls within a specialty occupation. *Ex. 2*. First, NuCurrent demonstrated that the position is so complex that it can be performed only by an individual with a Master's degree in electrical engineering, mechanical engineering, a closely

related field, or its equivalent, thus satisfying 8 C.F.R. § 214.2(h)(4)(iii)(A)(1). Second, NuCurrent demonstrated that the degree requirement is common among similar companies thus satisfying 8 C.F.R. § 214.2(h)(4)(iii)(A)(2). Third, NuCurrent demonstrated that the employer typically requires advance training for this position, thus satisfying 8 C.F.R. § 214.2(h)(4)(iii)(A)(3). Last, NuCurrent demonstrated that the nature of the specific duties is so specialized and complex that the knowledge required to perform the duties is usually associated with the attainment of a Master's degree or higher, thus satisfying 8 C.F.R. § 214.(h)(4)(iii)(A)(4).

44. As part of its RFE response, NuCurrent included a letter from its CEO, which incorporated and expanded upon the detailed description of job duties in the initial letter. *Ex. 2 at 18-19.* Those job duties are listed below:

- Develops wireless power systems and modules for a diversity of applications, including hand-held devices, automotive, medical and other consumer applications. Starting from obtaining spec from customer, to delivery of product-ready prototype and BOM.
- Designs charging circuits based on available components and reference designs from partner companies.
- Extensive hands-on design, troubleshooting and modeling will be required.
- Understand product requirements via research and customer-engagement. Work closely with Antenna Engineers to translate product requirements into engineering specifications.
- Execute the design and development of wireless power systems (including circuit and antenna design) for a variety of projects in parallel.
    - Design will include using simulation tools such as SPICE (or equivalent) for circuits, EM simulation software for antennas, and mathematical analysis using Matlab (or equivalent)
    - Development will include extensive hands-on testing with RF boards developed either in-house or by partners/customers, using oscilloscopes, VNA's and other test equipment
- Invent and develop intellectual property.
- Brief the company management on a regular basis on achievements and goals.

45. Plaintiff NuCurrent also included the following documents in response to the RFE.

- The Department of Labor's O*NET job description for a microsystems engineer, the occupational classification listed on the Labor Condition Application. This document demonstrates that extensive preparation is needed for the position and that 89% of employers require at least a bachelor's degree, while 56% require at least a Master's degree for employment in the position.
- The disclaimer from the US Bureau of Labor Statistics stating that the Occupational Outlook Handbook "should never, be used for any legal purpose", including for "formal job evaluation systems".
- The page from the Occupational Outlook Handbook provided by the Bureau of Labor Statistics that the USCIS relies on for evaluating whether positions qualify as a specialty occupation for H-1B purposes. This page is for electrical and electronics engineers, the closest category to the listed occupational category of microsystems engineer. The Occupational Outlook Handbook states "Electrical and electronics engineers must have a bachelor's degree" and "need a bachelor's degree in electrical engineering, electronics engineering, electrical engineering technology, or a related engineering field."
- Job postings for Hardware Engineer positions at other companies demonstrating that a Master's degree in electrical engineering is a typical requirement for the position.
- Resumes of employees previously in the Hardware Engineer role with NuCurrent, demonstrating that the company has previously hired employees with degrees in electrical engineering for the role.
- The organizational chart of the company
- A letter from Jim Crnkovic, Vice President of Engineering at NuCurrent, describing the nature of the Hardware Engineer role and the projects and clients Ms. Wadkar works with.

*USCIS' Denial of NuCurrent's H-1B Petition*

46. On October 23, 2018, Defendant USCIS denied NuCurrent's H-1B petition. *Ex. 3*. The decision makes fundamental factual errors by ignoring ample record evidence and is based upon clear errors of law.

47. USCIS misstated the law in concluding that, while a showing that at least one of the requirements in 8 C.F.R. § 214.2(h)(4)(iii)(A) is necessary to establish that the job falls within a specialty occupation, such a showing is not sufficient to satisfy the statutory definition. This interpretation contravenes the plain language of the regulation. Additionally, in stating that the regulatory criteria are "supplemental" to the statutory definition, the decision impermissibly

imposed evidentiary requirements beyond those required by Congress. By satisfying all four of the regulatory criteria, NuCurrent demonstrated that its job is in a specialty occupation.

48. In finding that NuCurrent did not satisfy the second regulatory criterion, second prong (8 C.F.R. § 214.2(h)(4)(iii)(A)(2)), USCIS incorrectly concluded that NuCurrent's detailed description of the Hardware Engineer's duties did not establish that the position was so complex as to require a degree in the specialized field. USCIS ignored the substantial supporting evidence explaining the complex nature of the job, including letters from supervisors at NuCurrent, when it stated that NuCurrent failed to provide any further evidence of the nature of the job.

49. As to all four regulatory requirements, USCIS erred when it determined that, because the LCA certification indicated that the Hardware Engineer is an entry level position (as reflected in the wage level 1 designation), it was not complex or specialized in nature. This ignores the fact that an entry level position in a specialty occupation is still a position within a specialty occupation for purposes of the H-1B visa classification. Moreover, a contrary interpretation would ignore the plain terms of the statute, which defines specialty occupation as one that "requires . . . attainment of a bachelor's or higher degree in the specific specialty (or its equivalent) as a minimum *for entry* into the occupation . . . ." 8 U.S.C. 1184(i)(1) (emphasis added). It also ignores the evidence showing that, while an entry level position because it involves no project or personnel management, the duties of the position are complex, unique and specialized.

### *NuCurrent's Appeal to the Administrative Appeals Office*

50. Plaintiff NuCurrent exercised its right to appeal the denial of the H-1B petition to the Administrative Appeals Office (AAO) of the USCIS. NuCurrent's notice of appeal was received

by USCIS on November 21, 2018. NuCurrent submitted its brief to the AAO on December 13, 2018. *Ex. 4*.

     51. Plaintiff NuCurrent included the following documents in support of its brief for its appeal to the AAO:

- The opinion in *Tapis International v INS* finding that a "specific specialty" cannot be read by USCIS to mean only positions that have a corresponding academic program at the collegiate level may qualify as a specialty occupation.
- The opinion in *Residential Finance Corporation v. U.S. Citizenship and Immigration Services* finding that fields of study and occupational titles are not the same.
- A non-precedential decision from the AAO.
- The opinion in *Next Generation Technology, Inc. v. Johnson* finding that the USCIS erred when interpreting the Occupational Outlook Handbook and O*NET when those resources state most individuals have a bachelor's degree and the USCIS states the position does not normally require a Bachelor's degree.
- An updated, three page, job description from CEO Jacob Babcock providing greater detail on the responsibilities of the Hardware Engineer role. *Ex. 4 at 117-120.*
- Resubmitted exhibit from the Occupational Outlook Handbook.
- Letter from John Major, President of MTSG, who has held senior and technical leadership roles in the wireless industry like Chairman of Broadcom, President of Qualcomm, SVP and CTO of Motorola, and board member of NuCurrent, attesting that he has been responsible for hiring thousands of engineers substantially similar to the Hardware Engineer position at NuCurrent, and that those roles have always required a degree in electrical engineering, mechanical engineering, or a closely related field.
- Letter from Charles Green, Chief Operating and Technical Officer at Powercast, another wireless technology company, attesting that Powercast hires for roles substantially similar to the Hardware Engineer position at NuCurrent, and that those roles have always required a degree in electrical engineering, mechanical engineering, or a closely related field.
- Letter from Robert Giometti, Vice President Engineering at Ossia, another wireless technology company, attesting that Ossia hires for roles substantially similar to the Hardware Engineer position at NuCurrent, and that those roles have always required a degree in electrical engineering, mechanical engineering, or a closely related field.
- Job postings for similar roles at other companies demonstrating that a degree in electrical or mechanical engineering is typical for roles similar to the Hardware Engineer position at NuCurrent.

- Job postings placed by NuCurrent for similar roles to the Hardware Engineer position, demonstrating that the company typically requires a degree in electrical engineering for similar positions.

52. On June 14, 2019, The AAO of Defendant USCIS, upheld the denial of NuCurrent's H-1B petition. *Ex. 5*. The decision makes fundamental factual errors by ignoring ample record evidence and is based upon clear errors of law.

53. The AAO, in its non-precedential decision, erroneously found that the "Petitioner's descriptions do not adequately demonstrate the substantive nature of the proffered position". In addition, the AAO questioned whether the position was appropriately classified as a microsystem engineer without providing any reason why this may be an inappropriate classification. The AAO asserted that other occupational codes may be appropriate for the position but did not provide any reason that the existing classification was incorrect, merely stating that the "record does not adequately demonstrate the duties of the proffered position", despite, being provided with a three page job description by Plaintiff NuCurrent.

54. Under 5 U.S.C. §§ 702 and 704, NuCurrent has suffered a "legal wrong" and has been "adversely affected or aggrieved" by agency action for which there is no adequate remedy of law.

55. Plaintiff NuCurrent has been deprived of Ms. Wadkar's practical application of the theoretical knowledge she acquired in her course of study culminating in her Master's degree with a major in electrical and computer engineering and her relevant work experience. In addition, NuCurrent has been deprived of its investment in Ms. Wadkar's professional talent and knowledge of the company's business gained from working there for over three years with the company.

**COUNT ONE**

**Violation of the Administrative Procedure Act, 5 U.S.C. § 701, et seq., the Immigration and Nationality Act and its Implementing Regulations**

56. Plaintiff re-alleges and incorporates by reference, as through fully set forth herein, the allegations in paragraphs 1-55 above.

57. Plaintiff is entitled to review by this Court pursuant to 5 U.S.C. §§ 701-706.

58. A reviewing court shall "hold unlawful and set aside agency action . . . found to be—arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A).

59. Defendants denied Plaintiff NuCurrent's H-1B petition solely on the ground that the evidence in the record was insufficient to establish that Plaintiff NuCurrent's Hardware Engineer position is a specialty occupation.

60. Plaintiff NuCurrent submitted sufficient evidence to meet the preponderance of the evidence standard, demonstrating that the position satisfied the statutory definition of a specialty occupation. 8 U.S.C. § 1184(i)(1)(A)-(B).

61. Plaintiff NuCurrent's evidence demonstrated that the position satisfied all four of the regulatory criteria for demonstrating a specialty occupation where the plain language of the regulation requires only one to be met. 8 C.F.R. § 214.2(h)(4)(iii)(A)(2) (second prong); (A)(4).

62. Defendants failed to properly consider all record evidence; reached factual conclusions as to these four regulatory criteria unsupported by any evidence in the record; misconstrued the applicable regulations; impermissibly imposed evidentiary requirements beyond those required by Congress; and erroneously concluded that Plaintiff NuCurrent had

not demonstrated that the Hardware Engineer position fell within a specialty occupation.

63. Defendant may in response to this complaint issue a further request for evidence to delay the proceeding in this litigation. Such a request, if issued, would be unreasonable as USCIS, between its initial review of the petition, review of NuCurrent's RFE response, and the AAO's de novo review of NuCurrent's appeal, has already had two complete opportunities to review all the evidence that the Hardware Engineer position qualifies as a specialty occupation.

64. Defendants' errors, singly and in combination, were arbitrary, capricious and in violation of the law. Consequently, Defendants acted arbitrarily, capriciously, and contrary to the law in violation of the APA, the INA, and the immigration regulations by denying Plaintiff NuCurrent's H-1B petition.

**REQUEST FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests that this Court:

1. Declare that Defendants' determination that evidence submitted by Plaintiff NuCurrent was insufficient to establish that the Software Hardware Engineer position is in a specialty occupation was arbitrary and capricious, and not in accordance with law, in violation of the APA, 5 U.S.C. § 706(2)(A), the INA and the regulations;

2. Vacate the denial of NuCurrent's H-1B petition and remand this matter to Defendants with instructions that, within ten days of the date of the Court's Order, they: approve the Form I-129, Petition for Nonimmigrant Worker filed by Plaintiff NuCurrent.

3. Award reasonable attorneys' fees and costs pursuant to the Equal Access to Justice Act, 28 U.S.C. § 2412(d), 5 U.S.C. § 504, or any other applicable law; and

4. Grant such other relief as the Court deems just, equitable and proper.

Dated: August 9, 2019

Respectfully submitted,
_/s/ Matthew B Meltzer_____
Matthew Meltzer (Illinois Bar # 6306591)
Meltzer Hellrung LLC
79 W Monroe St, Suite 1312
Chicago, IL 60603
Telephone: 312-380-5460
Fax: (202) 742-5619
Email: mmeltzer@meltzerhellrung.com
*Attorney for Plaintiff NuCurrent*